## Case No. 16,065.

### UNITED STATES v. POMEROY.

[3 N. Y. Leg. Obs. 143.]

District Court, N. D. New York. July 10, 1844.

POST OFFICE LAWS — SENDING LETTERS BY EXPRESS.

A person who sends a packet of letters by a passenger in a railroad car over a post road, without the knowledge and against the consent of the owners of the car and their agents, is not subject to the penalty imposed by the nineteenth section of Act Cong. c. 275 [3 Story's Laws, 1990; 4 Stat. 107. c. 64].

[Followed in U. S. v. Hall, Case No. 15,201.]

Joshua A. Spencer, U. S. Dist. Atty.

S. Stevens and M. T. Reynolds, for defendant.

CONKLING, District Judge. This is a penal action [against George E. Pomeroy], founded on the nineteenth and twenty-fourth sections of the act regulating the post office department, passed March 3, 1825. By the nineteenth section it is enacted, that no stage or other vehicle. which regularly performs trips on a post road, or on a road parallel to it, shall carry letters: that for a violation of this provision. the owner of the carriage or other vehicle, shall incur the penalty of fifty dollars: Provided, that it shall be lawful for any one to send letters by special messenger. By other sections of the act many other acts are prohibited, and declared punishable. And the twenty-fourth section provides in general terms, that every person who, from and after the passage of this act, shall procure, and advise, or assist, in the doing or perpetration of any of the acts or crimes by this act forbidden, shall be subject to the same penalties and punishments as the persons are subject to who shall actually do or perpetrate any of the said acts or crimes according to the provisions of this act.

The declaration contains twenty counts, each charging the defendant with having procured. advised, and assisted a certain vehicle, to wit, a railroad car, performing regular trips on a railroad, in this district, such road being a post road, to convey letters contrary to the form of the statute. The evidence in behalf of the United States, assuming that the witnesses are entitled to credit, establishes the fact that many letters were received by the agents of the defendant, for the purpose of being conveyed, and were in fact conveyed for hire by his agents, acting under the name of messengers, on the roads designated in the declaration, in the cars of the owners of the roads; and the evidence tends to prove that this was done with the knowledge of the defendant,—its sufficiency for this latter purpose being. however, denied by the counsel for the defendant. On the other hand, it appears that the defendant's messengers travelled on the roads in question merely in the character of passengers, purchasing tickets for that purpose from time to time, and that the owners of

the cars and their agents were ignorant of the fact of their having letters in charge. It is moreover admitted by the district attorney, that in order to subject the owner of a vehicle to the penalty provided by the nineteenth section of the act, it must appear that letters were conveyed in such vehicle with his knowledge and assent; and that no penalty has therefore been incurred under that section by owners of the cars now in question.

Under this state of the case I am called upon by the defendant's counsel to instruct the jury, among other things, that in order to render a person liable to the penalty provided by the twenty-fourth section of the act, it must be shown that by his procurement, assistance or advice, some other person has committed the act forbidden by the nineteenth section; and that the plaintiffs have therefore failed in point of law to establish a right of recovery. This proposition has been strenuously and very ably contested by the district attorney, who insists that the offence described in the twenty-fourth section taken in connection with the nineteenth section, is a distinct and independent offence, which may be committed by one person without the participation or agency of any other person. This is not a new question, though it is one of recent origin in the courts. It was involved in the case of U. S. v. Adams [Case No. 14,421], tried nearly a year ago in the district court for the Southern district of New York, though from the report of the case read yesterday by the defendant's counsel, the question does not appear to have been very distinctly presented to the court. The opinion of the court is however understood to have been favorable to the construction of the law insisted on by the defendant's counsel in the present case. But the case of U. S. v. Kimball [Id. 15,531], tried a few months since in the district court for the Massachusetts district, turned directly upon this question. The opinion of his honor, Judge Sprague, upon it, after argument, is elaborate, and apparently well considered; and it was in accordance with the instructions now asked by the defendant's counsel. He held that a person who sends a letter by a passenger in a railroad car is not liable to the penalty provided by the twenty-fourth section of the act, unless the owner of the car is liable to the penalty provided by the nineteenth section. The case was carried to the circuit court by writ of error, and the decision of the district court was affirmed by Mr. Justice Story. If these had been the only decisions upon this question I should have felt little hesitation in yielding to their authority. But a contrary decision having lately been made by the learned judge of the Eastern district of Pennsylvania. in the case of U. S. v. Fisher [Id. 15,100]. and. as it would seem also from an imperfect report read by the district attorney, by the district court for the district

of Maryland, in the case of U. S. v. Gilmour [Id. 15,208], I have felt it to be my duty to consider the question as an original one, and especially to scrutinize the conflicting judicial opinions pronounced in the Cases of Kimball and Fisher,—these opinions having, as it is understood, been published under the sanction of the learned judges themselves. In doing this, I have been essentially aided by the luminous arguments of the learned counsel by whom this trial has been conducted.

I had read the opinion of the judge of the Massachusetts district upon its first appearance two months ago, and was forcibly impressed with the course of reasoning by which his decision was fortified, and, as I have already intimated, should not have hesitated to acquiesce in it, had there been no conflicting decision, and but for the forcible argument of the district attorney in the present case. My attention has therefore been chiefly directed to the reasoning of his honor, Judge Randall, and that of the district attorney. The learned judge, in assigning his reasons for the conclusion at which he had arrived, is reported to have said, that "offences even of the highest grade, may be committed through the medium of an innocent agent, and the employer be answerable as principal, even although not present when the act was committed. Thus," he adds, "one who employs an idiot or a child, under the age of discretion, to do an unlawful act, is liable to punishment for it, although the act was done in his absence." This is undoubtedly sound doctrine; but I am not able to perceive any propriety in its application to the case in question. The reason why one who employs a child or an idiot, or instigates a mad man to commit a crime, is himself directly responsible as principal, instead of being but an accessory before the fact, is, that the immediate actor is irresponsible. For every offence committed, some one must necessarily be amenable as the principal offender. In the cases supposed by the learned judge, if the intermediate agents were accountable for their acts at all, it could only be as principals; but being irresponsible, he by whom their acts were prompted, is justly substituted in their place,—just as one who should maliciously unchain a wild beast in the midst of a populous town would be held accountable, as principal, for the injury which should accrue. But the reasons of this doctrine do not exist when the unlawful act is perpetrated by a person who is himself amenable to the law for his acts, and therefore the doctrine itself is inapplicable to such a case. The owner and conductor of the railroad car were such persons; and if they committed the act forbidden by the nineteenth section, they were responsible for it as principals.

But it was conceded that in the eye of the law they did not commit it,—and justly,—because, according to an old and well established legal maxim, it is the mind and not the act which constitutes the criminal. Neither was it pretended that the act prohibited by the nineteenth section—that of conveying letters in a vehicle regularly performing trips on a post-road—was committed by the defendant. The charge against him was that he procured and advised or assisted another to commit it. But a charge against one person of having advised and assisted another to commit an offence not in fact committed by him, involves in my judgment a degree of inconsistency wholly irreconcilable with that precision and certainty which the law demands in the administration of penal justice, and which are essential to the security of the citizen. Besides if the principles applied by the court in the Case of Fisher, had really been applicable to such a case, the defendant ought to have been prosecuted, not under the twenty-fourth section, for procuring, advising and assisting, &c., but under the nineteenth section, for actually conveying the letters. By this means the inconsistency just mentioned, at least, would have been avoided. It was further remarked by the learned judge, as appears by the report, that while it was true that penal statutes were to be construed strictly, they were "not to be construed so strictly as to defeat the obvious intention of the legislature, when that intention can be collected from the words used in the act." This position, in its just sense, is also incontrovertible; but in my opinion it does not warrant the decision in support of which it was adduced. The question was, whether a person who sends a packet of letters by a passenger in a railroad car over a post road, without the knowledge and against the consent of the owners of the car and their agents, is within the words of the act. I think there are no words in the act descriptive of such person.

No doubt the design of the act was to secure to the United States, so far as could be done without improperly trenching upon the freedom of the citizen, the entire emoluments arising from the transportation of letters on post roads. But this design, however obvious, does not authorize the judicial branch of the government to extend the act to descriptions of persons not embraced within its terms, however strongly and mischievously their acts may tend to defeat its design. It often happens that what the courts, in giving a construction to statutes, are bound, by the settled rules of interpretation, to consider the intention of the legislature, falls far short of the general policy and objects of the act. This remark may be well illustrated by reference to the 3rd section of the amendatory post office act of 1827 [4 Stat. 238], by which it is made penal to "set up any foot or horse post for the conveyance of letters or packets upon any post road." Now, it is very clear that the transportation of letters in railroad cars drawn by steam, is in direct conflict with the de-

sign of this prohibition; and yet it seems to be agreed on all hands that no penalty is incurred under it by the conveyance of letters in this mode, because the act contains no words descriptive of such an offence. For the same reason, the act of 1825 ought not, as I think, to have been construed to embrace the Case of Fisher. If congress had really intented to prohibit the conveyance of letters by passengers, it would have been easy, by apt terms, directly and plainly to declare such intent. The practice of sending letters by passengers in the public conveyances on post roads, has always and notoriously prevailed, and must have been known to congress in 1825. Until recently, letters were thus sent only occasionally, and were taken in charge, not for hire, but as a mere act of kindness or of social obligation. While the practice was thus restricted, it may reasonably be supposed that congress did not deem it necessary or just to interfere with it. The practice has now, on some of the principal post roads, become a regular systematized business, carried on for profit. But I cannot acquiesce in the argument that its extension has altered its legal nature or enlarged the jurisdiction of the courts. If it has become an evil requiring correction by the public authority, it is the province of the legislature to apply the remedy.

The district attorney relies chiefly on the term "procure," and his argument is, that, however it may be with the words "advise and assist," there is no absurdity in the charge against the defendant, of having "procured" the car to carry letters, because by paying his passage he acquired a right to a seat, and then used this right for the purpose of carrying letters. In my judgment this is an unwarrantable interpretation of the word "procure," as used in the act. It can, in my opinion, no more be applied to an inanimate thing, than the words "advise or assist," with which it is associated. It does not mean, to obtain or get possession of; but to induce, by persuasion, bribery, or by other means, acting on the will of an intelligent being. It is admitted that the offence described in the nineteenth section can only be committed by the wilful act of some person; and I hold it to be clear that no penalty can be incurred under the twenty-fourth section, except by procuring, advising or assisting the commission of that offence. Upon the whole, therefore, I shall consider it my duty to instruct the jury upon this point in accordance with the request of the defendant's counsel.

Another, and far more important question has been raised, viz.: whether the constitution confers upon congress the power to restrain a private citizen from carrying letters in competition with the mail of the United States. But upon this, as well as upon the other points relied on by the defendant's counsel, it is unnecessary to express any opinion, and I therefore forbear to do so.